UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KAREENA JO ROBINSON,

      Plaintiff,

v.                                                  CASE NO. 3:20-cv-761-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing held on February 13, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from August 26, 2014, the alleged disability onset date, through July 19, 2019, the date of the ALJ's decision.[2] (Tr. 17-74.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 20.)

[2] Plaintiff had to establish disability on or before December 31, 2019, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 17.)

## I.      Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.     Discussion

Plaintiff raises two issues on appeal.  Her first argument is that the

2

ALJ erred in assigning partial weight to the opinions of her long-time treating physician, Arthur M. Schueler, Jr., D.O., while according great weight to the opinions of the State Agency non-examining physicians and consultative examiners. (Doc. 22 at 16-21.) Plaintiff's second argument is that the ALJ's finding that Plaintiff can perform a reduced range of light work is contrary to law. (*Id.* at 21-22.) Plaintiff explains:

> [T]he ALJ failed to reconcile his RFC finding that [Plaintiff] was limited to light work with a sit/stand option with the framework of Social Security Ruling (SSR) 83-12, which states that an individual who requires a sit/stand option is not functionally capable of doing the prolonged sitting contemplated in the definition of light work. As such, the ALJ's finding that [Plaintiff] can perform light work is contrary to law. SSR 83-12 . . . states further that unskilled types of jobs such as [those] [Plaintiff] is capable of performing, described by the ALJ as "limited to simple tasks and simple work-related decisions," (R. 390) are particularly structured so that a person cannot ordinarily sit or stand still at will.

(*Id.* (footnote omitted).)

Defendant responds that the ALJ had good cause to give partial weight to Dr. Schueler's opinions and his residual functional capacity ("RFC") assessment is supported by substantial evidence. (Doc. 23 at 7-12.) As to Plaintiff's second argument, Defendant asserts that the ALJ complied with SSR 83-12 by obtaining testimony from a Vocational Expert ("VE") to determine the implications of a sit/stand option. (*Id.* at 12-14.)

## A.      Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No.

06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also*
*Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state
agency medical and psychological consultants because they 'are highly
qualified physicians and psychologists, who are also experts in Social
Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948
(11th Cir. 2008) (per curiam); *see also* SSR 96-6p[3] (stating that the ALJ must
treat the findings of State agency medical consultants as expert opinion
evidence of non-examining sources). While the ALJ is not bound by the
findings of non-examining physicians, the ALJ may not ignore these opinions
and must explain the weight given to them in his decision. SSR 96-6p.

## B.   Relevant Opinion Evidence

### 1.   Treating Source

On September 20, 2016, Dr. Schueler completed a Medical Source
Statement ("MSS") about Plaintiff's physical limitations. (Tr. 409-10.)
Plaintiff's impairments included: degenerative disc disease of the lumbar
spine, fibromyalgia, and chronic pain. (Tr. 409.) Dr. Schueler characterized
Plaintiff's pain as moderately severe and noted it would cause her to be off

---

[3] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March
27, 2017. However, because Plaintiff's application predated March 27, 2017, SSR
96-6p was still in effect on the date of the ALJ's decision.

task 50% of the workday, and to lie down and take unscheduled breaks.  (Tr. 410.)  He also noted that Plaintiff's limitations had lasted or would be expected to last 12 or more consecutive months.  (*Id.*)  Additionally, Dr. Schueler noted that Plaintiff's medications (Norco, Valium, and Gabapentin) caused side effects that would interfere with her ability to maintain focus and concentration.  (*Id.*)  Dr. Schueler opined that Plaintiff should never stoop and climb; could infrequently lift/carry 11 or more pounds and raise her arms over the shoulder; could occasionally stand and walk; and could frequently sit, lift/carry up to 10 pounds, and use her hands for fine and gross manipulation.  (Tr. 409.)  Dr. Schueler further opined that Plaintiff would miss more than five days of work per month due to her medical conditions.  (*Id.*)

On the same day, Dr. Schueler also completed a Medical Statement Concerning Chronic Pain Syndrome for Social Security Disability Claim.  (Tr. 411-12.)  He characterized Plaintiff's chronic pain as moderate in severity, causing marked restriction in activities of daily living and in maintaining social functioning, and deficiencies in concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner.  (*Id.*)  Dr. Schueler noted that Plaintiff's pain level was between 5 and 10 on a scale of 0 to 10 and she was hurting all the time.  (Tr. 412.)  Plaintiff had the following symptoms associated with her pain: pervasive loss of interest in almost all

6

activities, sleep disturbance, crying spells, psychomotor agitation or retardation, decreased energy, and feelings of guilt or worthlessness.  (Tr. 411.)

On December 27, 2016, Dr. Schueler completed a Treating Source Fibromyalgia Questionnaire.  (Tr. 463-64.)  He noted the following symptoms: gait disturbance, history of chronic pain, chronic fatigue, malaise, and positive tender points.  (Tr. 463.)  He also noted that Plaintiff's lower extremity strength was 3/5, she required frequent periods of rest and had daily flare-ups and muscle pain.  (Tr. 464.)

On the same day, Dr. Schueler also completed a Treating Source Mental Status Report.  (Tr. 465-67.)  He opined that Plaintiff's mental status was unremarkable except for depressed outlook, hopelessness, and decreased self-esteem.  (Tr. 465.)  He diagnosed depression and fibromyalgia, and noted degenerative disc disease of the lumbar spine.  (Tr. 466-67.)  Dr. Schueler observed that Plaintiff ambulated without an assistive device and cared for her chronically ill mother.  (*Id.*)  In conclusion, Dr. Schueler opined that Plaintiff was "probably not" capable of sustaining work activity for eight hours a day, five days a week due to fatigue and back pain.  (Tr. 467.)

On July 26, 2018, Dr. Schueler wrote a letter, stating as follows:

> [Plaintiff] has been in my care since September 18, 2000.  I have treated her for multiple debilitating conditions without any successful improvements.  Due to these ongoing conditions[,]

[Plaintiff] has been unable to complete daily activities[,] making it difficult to carry out any repetitive motions[,] such as standing or sitting for employment as well.  [Plaintiff] suffers from Degenerative Disk Disease, Peripheral Neuropathy, Osteoarthritis, Cervical Myositis, Fibromyalgia, Chronic Pain, and Head Tremors that make every[-]day tasks difficult.  Along[-]side these conditions[,] she also suffers from[] Migraines, Depression, Asthma, COPD, Sleep Apnea, GERD, [and] Hypertension.  These [conditions] only worsen and add to the previous[ly] stated conditions.  Based on my professional evaluation[,] these chronic, life[-]long debilitating conditions have not been making any improvements, therefore[,] based on my professional evaluations[,] I feel that [Plaintiff] would benefit from receiving Social Security Disability.

(Tr. 734.)

On January 9, 2019, Dr. Schueler completed an RFC form regarding Plaintiff's functional abilities.  (Tr. 784-88.)  He stated that he saw Plaintiff monthly and listed the following symptoms: shortness of breath with exertion, generalized weakness, lumbar back pain radiating into both legs, and burning of both feet.  (Tr. 784.)  He diagnosed fibromyalgia, degenerative disc disease of the lumbar spine, cervical myositis, migraine headaches, bursitis in shoulders, COPD, GERD, hypertension, sleep apnea, depression, and anxiety.  (*Id.*)  In support, Dr. Schueler cited to the lumbar MRI findings of moderate neuroforaminal narrowing in L5-S1 and central spinal stenosis in L3-L4 and L4-L5.  (*Id.*)  Plaintiff's treatment included: "chronic opiates necessary to control pain[,] Valium for anxiety and muscle relaxant[,] [and] Omeprazole for GERD/abdominal pain."  (*Id.*)  Dr. Schueler's prognosis was

8

poor.  (*Id.*)  He stated that Plaintiff's disability was expected to last, or had already lasted, one or more years.  (*Id.*)

Dr. Schueler opined that Plaintiff's pain in the back, legs, hips, and muscles prevented her from standing and sitting for six to eight hours, but she could stand or sit for 45 minutes to an hour, and she could walk only 500 feet non-stop.  (Tr. 785.)  In addition, Plaintiff needed to lie down during the day for one to two hours to relieve back spasms.  (*Id.*) Dr. Schueler opined that Plaintiff could lift and carry up to 20 pounds during an eight-hour period, but less than five pounds regularly; could rarely reach; could frequently handle and finger; could bend at 50% and turn her body to 90º; and was unable to squat or kneel.  (*Id.*)  He stated that Plaintiff's pain was 7/10 with medication and 10/10 without medication.  (Tr. 786.)  As an objective medical reason for the pain, Dr. Schueler pointed to "X-ray confirmation."  (Tr. 787.)  He added that Plaintiff was unable to travel alone due to anxiety.  (Tr. 786.)  Also, she was unable to resume work due to marked increase in general arthritis and neuropathy, and her disability was unlikely to change.  (Tr. 787.)  Dr. Schueler added that Plaintiff had difficulty reading and spelling, implying that she could not do other work.  (*Id.*)  Dr. Schueler further opined that Plaintiff's disability began in 2013.  (*Id.*)

### 2.    Examining Sources

On February 1, 2017, Plaintiff was examined by Peter Knox, M.Ed.,

Psy.D. at the request of the Social Security Administration.  (Tr. 468-72.)
Plaintiff stated that she was disabled because of deteriorating discs and
arthritis in her back, fibromyalgia, neuropathy in her feet, knee pain, and
stress.  (Tr. 468, 472.)  In addition, Plaintiff had three heart catheterizations
for mitral valve issues, with the last one in 2014.  (Tr. 472.)  Dr. Knox
observed that Plaintiff had "a problem ambulating as she limped."  (Tr. 471.)
Plaintiff stated that she could lift and carry no more than ten pounds and
could not carry it far.  (*Id.*)  Plaintiff did not appear to have problems sitting,
but she noted that her feet and legs would hurt after 15 minutes and that her
back would always hurt.  (*Id.*)

Her mental status examination was normal, except for dysphoric mood,
somber affect, and ability to recall only three out of four words.  (Tr. 470.)
Psychologically, Plaintiff seemed "to fit a Major Depressive Disorder in the
mild range."  (Tr. 472.)  Dr. Knox diagnosed a Major Depression, mild, and
assessed a GAF score of 60.  (*Id.*)

 On February 7, 2017, Plaintiff was examined by William V. Choisser,
M.D., a family/general practice physician, at the request of the Social
Security Administration.  (Tr. 473-74.)  He summarized Plaintiff's complaints
and medical history as follows:

> [Plaintiff] had to quit [her job] in 2014 because of severe pain all
> over her body from fibromyalgia as well as painful lower back
> and pain in her feet.  She was involved in an auto accident 20

years ago and suffered injuries to her neck and lower back.  Over the years[,] the doctors [have] told her that she has disc disease and arthritis in her spine.  She has been seeing her primary care physician who has diagnosed her with fibromyalgia because she has pain in her shoulders, up and down her back[,] and in her arms and legs from this condition.  She has difficulty walking any distance without holding on to a shopping cart for [sic] something for support.  She is unable to vacuum her house and has assistance from her family.  She is afraid to travel alone for fear of falling because she has degenerative arthritis in her knees that feel unstable.  Standing is limited to an hour to [sic] time because of her pain before she has to change positions.  When she is sitting, she is limited to a recliner with her legs elevated because of her back and leg pain.  She can lift up to 10 pounds at a time but she cannot bend and lift repetitiously.  She is right-hand dominant and able to pick up small objects with the fingers of either hand.  . . .  She was the victim of abuse when she was younger and now is even more depressed because of her chronic pain.  She has severe panic attacks with anxiety requiring Valium 10 mg twice a day.  She takes Norco every six hours as needed for pain.  . . .  Her arthritic symptoms are worse in cold weather and when storms [are] passing.  She has been diagnosed with obstructive sleep apnea but needs titration for a CPAP device.

(Tr. 473.)

At the time of the examination, Plaintiff's weight was 220 pounds, her blood pressure was 140/90, and she appeared "quite depressed." (*Id.*) Her physical examination was normal, except for the following:

[Plaintiff] has reduced cervical rotation of only 45º in either direction.  Her lungs have some diffuse expiratory wheezes but no rales or rhonchi.  . . .  Her hands feel colder than normal.  . . .  The Tinel test is positive in the right wrist but not on the left side.  . . .  Range of motion of her lower extremities is normal except for back pain on flexion of her hips at 90º.  Her gait appears fairly normal[,] but she is very unsteady on heel to toe walking.  Her back has a lordotic curve even when bending over

11

and is limited to 80° flexion. Her squat is limited one half the distance to the floor. Her finger to nose testing shows a slight intention tremor that disappears at rest. She is very tender to palpation up and down the muscles of her back consistent with fibromyalgia.

(Tr. 474.) The range of motion report form revealed reduced range of motion in the cervical and lumbar spine and with hip flexion. (Tr. 475-77.) Dr. Choisser's impression was chronic low back pain, chronic pain from fibromyalgia, chronic severe depression and anxiety, carpal tunnel syndrome ("CTS") in the right hand, and obstructive sleep apnea that needed treatment with continuous positive airway pressure ("CPAP"). (Tr. 474.)

### 3.   State Agency Non-Examining Sources

On February 7, 2017, Pauline Hightower, Psy.D. completed a Psychiatric Review Technique ("PRT"), opining that Plaintiff's mental impairments were non-severe, as supported by her diagnosis of mild depression and her daily activities that were mostly limited by physical impairments. (Tr. 124-25.) On May 15, 2017, Michelle Butler, Psy.D. completed a PRT, confirming Dr. Hightower's opinion that Plaintiff's mental impairments were non-severe, as supported by her diagnosis of mild depression and her daily activities that were mostly limited by physical impairments. (Tr. 145.)

On March 15, 2017, based on a review of the records available as of that date, Sunita Patel, M.D. completed a Physical RFC Assessment of

Plaintiff's abilities.  (Tr. 126-29.)  Dr. Patel opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could sit for about six hours and stand and/or walk for about six hours in an eight-hour workday; could frequently balance, stoop, kneel, crouch, and crawl; could occasionally climb ramps/stairs; should never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme cold, humidity, vibration, hazards, and fumes, odors, dusts, etc.  (Tr. 126-28.)  Dr. Patel noted, *inter alia*, that Plaintiff's symptoms were partially consistent with the physical findings and her daily activities.  (Tr. 129.)

On May 12, 2017, based on a review of the available records, P.S. Krishnamurthy, M.D. completed a Physical RFC Assessment of Plaintiff's abilities.  (Tr. 147-50.)  Dr. Krishnamurthy opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could sit for about six hours and stand and/or walk for about six hours in an eight-hour workday; could frequently stoop, kneel, crouch, crawl, and climb ramps/stairs; could occasionally climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to extreme cold, humidity, vibration, hazards, and fumes, odors, dusts, etc.  (Tr. 147-49.)  Dr. Krishnamurthy noted, *inter alia*, that Plaintiff's symptoms were partially consistent with the physical findings and her daily activities.  (Tr. 150.)

## C.    The ALJ's Decision

The ALJ found at step two of the sequential evaluation process[4] that Plaintiff had the following severe impairments: obesity, major depression, lumbar disc disease, chronic obstructive pulmonary disease ("COPD"), degenerative joint disease ("DJD") of the knees, hypertension, gastroesophageal reflux disease ("GERD"), neuropathy, fibromyalgia, sleep apnea, right-sided CTS, head tremors, and cervicalgia.  (Tr. 20.)  Then, before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform a reduced range of light work[5] as follows:

> [The claimant can] lift/carry 20 pounds occasionally and 10 pounds frequently; sit for up to 6 hours, stand for up to 6 hours, and walk for up to 6 hours; push/pull as much as she can lift/carry; occasionally use foot controls and hand controls; frequently handle, finger, and feel with the dominant right upper extremity; occasionally climb[] ramps and stairs, but never climb ladders and scaffolds; frequently balance, stoop, and crouch; occasionally kneel; never crawl; should avoid any unprotected heights or moving mechanical parts; no concentrated exposure to humidity, wetness, dust, fumes or gases; never work in environments with temperature extremes; limited to simple tasks and simple work-related decisions; no more than occasional interaction with supervisors, co-workers, and the general public; time off-task can be accommodated by normal breaks; needs a sit/stand option allowing for a change of position at least every 30 minutes, consisting of a brief positional change lasting no more

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

[5] By definition, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking, standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b); SSR 83-10.

than 3 minutes at a time with the claimant remaining at the workstation during the position change; and needs a cane for ambulation.

(Tr. 23.)

In making this finding, the ALJ discussed Plaintiff's subjective complaints, the objective medical findings, and the records and opinions of treating, examining, and non-examining sources.  (Tr. 24-32.)  The ALJ weighed the opinions of the State agency examining and non-examining sources as follows:

> The [ALJ] gives great weight to the assessments of the State agency medical and psychological consultants.  The findings are well supported by extensive objective medical evidence and consistent with the claimant's treatment history.  Similarly, the [ALJ] gives great weight to the opinions of the consultative examiners in the record, as the findings are supported by clinical and objective examination.

(Tr. 30.)

The ALJ gave "partial weight" to Dr. Schueler's treating opinions.  (Tr. 32.)  He explained:

> Great weight is given to [Dr. Schueler's] physical examination findings in the record, which are consistent with a conservative treatment history.  Little weight is given to the treating source statements, particularly those that were generated by the claimant's representative, as they [are] not entirely consistent with the examination findings and treatment history.  To be clear, the record documented a lengthy treatment history of pain symptoms, along with sleeping and breathing difficulty.  However, the treatment regimen of pain medication, inhaler and CPAP address these symptoms.  The treatment records also provide that the claimant's depression and anxiety were related

15

more so due to pain and stress.  The claimant said she could not
go out alone due to dizziness, back and leg pain (Ex. 5E).  The
record reflects treatment with medication for hypertension and
GERD; it does not reflect specific treatment for obesity.  The
opinion of Dr. Schueler that the claimant is totally and
permanently disabled is a legal conclusion left to the [ALJ] . . .
(20 CFR 404.1527(e)(1)).

(*Id.*)  The ALJ concluded that his RFC assessment was supported by the

assessments and opinions of the State agency medical and psychological

consultants, the examining and treating physicians, and the overall evidence

in the record.  (*Id.*)

At step four, the ALJ determined that Plaintiff was unable to perform

any of her past relevant work.  (*Id.*)  However, at the fifth and final step of

the sequential evaluation, the ALJ determined, after considering Plaintiff's

age, education, work experience, RFC, and the VE's answers to

interrogatories submitted after the hearing, that there were jobs existing in

significant numbers in the national economy that Plaintiff could perform,

such as a decorating inspector (DOT # 579.687-014), an assembler of small

products (DOT # 706.684-022), and an inspector and packer (DOT # 559.687-

026).  (Tr. 33, 390-92.)  All of these representative occupations are light, with

a Specific Vocational Preparation ("SVP") of 2.  (Tr. 33.)

### D.    Analysis

The Court finds that the ALJ gave good reasons, supported by

substantial evidence, for according partial weight to Dr. Schueler's opinions.

16

As the ALJ observed, Dr. Schueler's physical examination findings were consistent with a conservative treatment history and were given great weight. Plaintiff was treated with prescription and non-prescription medications[6] (*see, e.g.*, Tr. 381, 413, 695, 701), and Dr. Schueler's progress notes largely documented Plaintiff's subjective complaints and diagnoses with little or no objective examination findings. (*See, e.g.*, Tr. 76 (reporting pain in the knees and legs, worse in the morning, as well as pain in the shoulders, hands, and feet, and noting that Norco helped some); Tr. 77 (noting spasms and decreased range of motion); Tr. 78 (noting that Plaintiff continued to hurt all over); Tr. 694 (noting, *inter alia*, that Plaintiff continued to have back pain and benefited from medications); *see also* Tr. 79-80, 413-28, 483-84, 491-92, 696-716, 738-42, 764-67.) Thus, the ALJ correctly noted that Dr. Schueler's opinions of marked limitations were not entirely consistent with his examination findings and Plaintiff's conservative treatment history. In addition, Dr. Schueler's opinion that Plaintiff was disabled was on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

The ALJ's evaluation of the consultative and non-examining opinions is

---

[6] Although Dr. Schueler's progress notes are partially illegible, there seems to be a reference to a trigger point injection in the right shoulder. (Tr. 765.)

also supported by substantial evidence.  As the ALJ pointed out, the consultative examiners' opinions were supported by clinical and objective findings.[7]  In addition, the State agency non-examining doctors' opinions were supported by "extensive objective medical evidence" and were consistent with Plaintiff's lengthy, but conservative, treatment history.  (*See* Tr. 124-29, 145, 147-50.)

Plaintiff's second argument is that the ALJ failed to reconcile his RFC finding that Plaintiff was limited to light work with a sit/stand option with the framework of SSR 83-12.  Defendant correctly points out that the ALJ complied with SSR 83-12 by obtaining testimony from a VE to determine the implications of a sit/stand option.

SSR 83-12 provides in relevant part:

> There are some jobs in the national economy – typically professional and managerial ones – in which a person can sit or stand with a degree of choice.  . . .  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a [Vocational Specialist] should be consulted to clarify the implications for the occupational base.

---

[7] The diagnostic test results in the record were largely unremarkable or showed only mild abnormalities (*see, e.g.*, Tr. 478, 761), except for the June 17, 2016 lumbar X-rays and July 25, 2016 lumbar MRI, which revealed both mild and moderate findings.  (Tr. 405-06 ("There is considerable disc height narrowing at L4-5 and L5-S1.  Posterior osteophytosis at L4-5 and L5-S1 noted.  Mild disc height narrowing at L3-4 also noted as well as mild end plate osteophytosis.  Facet hypertrophy at the lower lumbar levels is moderate in degree.  . . ."); Tr. 436 ("L5-S1 mild to moderate left neural foraminal narrowing with left L5 nerve root abutment .  . . .  L3-4 and L4-5 mild central canal and neural foraminal narrowings [sic] without nerve root compromise.").)

SSR 83-12.  Here, the ALJ determined that Plaintiff could perform light work with limitations, including "a sit/stand option allowing for a change of position at least every 30 minutes, consisting of a brief positional change lasting no more than 3 minutes at a time with the claimant remaining at the workstation during the position change."  (Tr. 23.)  "To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC] in Interrogatories submitted after the hearing."  (Tr. 33.)  The VE responded that "given all of these factors," Plaintiff could perform the requirements of representative occupations, such as a decorating inspector, an assembler of small products, and an inspector and packer.  (Tr. 33, 390-91.)  The ALJ adopted the VE's responses and thereby complied with SSR 83-12.  *See Kelley v. Colvin*, No. 8:14-cv-2423-T-MCR, 2016 WL 626139, *4 (M.D. Fla. Feb. 17, 2016); *see also Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 699 (11th Cir. 2006) (per curiam) (finding "the ALJ's hypothetical to the VE was proper and the VE testimony constituted substantial evidence to support the Commissioner's decision" where "the VE clarified that the jobs she identified, although not professional or managerial in nature, did provide for a sit/stand option"); *Vanhorn v. Comm'r of Soc. Sec.*, No. 6:19-cv-31-Orl-LRH,

2020 WL 998724, *8 (M.D. Fla. Mar. 2, 2020) (finding the ALJ's hypothetical to the VE was proper and the VE's testimony constituted substantial evidence to support the Commissioner's decision where the VE testified that the jobs identified were compatible with a sit/stand option that allows for a three-minute positional change every 30 minutes); *Madsen v. Berryhill*, No. 2:16-cv-889-FtM-DNF, 2018 WL 1225089, *7 (M.D. Fla. Mar. 9, 2018) (finding that the ALJ did precisely what SSR 83-12 requires by questioning the VE regarding a sit/stand option); *Bush v. Colvin*, No. 3:13-cv-691-J-JRK, 2014 WL 1456951, *4 n.4 (M.D. Fla. Apr. 14, 2014) ("'SSR 83-12 does not endeavor to decide that there can *never* exist significant light jobs with a sit/stand option'; rather, it directs an ALJ to obtain VE testimony in such cases. . . . Here, the ALJ did just that.") (emphasis in original).  Based on the foregoing, the Commissioner's decision is due to be affirmed.

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of

the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment consistent with

this Order, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 2,

2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record